*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

JOSHUA ROBERT EBERLINE,

      Defendant-Appellant.

UNPUBLISHED
June 09, 2026
10:47 AM

No. 371674
Genesee Circuit Court
LC No. 2021-049009-FC

Before: CAMERON, P.J., and BOONSTRA and SWARTZLE, JJ.

PER CURIAM.

Defendant appeals by right his convictions of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), and second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a). The trial court sentenced defendant as a second-offense habitual offender, MCL 759.10, to concurrently serve 30 to 60 years' imprisonment for CSC-I and 5 to 22.5 years' imprisonment for CSC-II. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

In 2009, while defendant was on parole from an unrelated sentence, he moved in with his sister, her husband, and their four children, in Montrose. EG was the youngest of these children. EG testified that when she "was around six years old," she was playing with defendant in his room when he shook her pants down and touched her "vagina on the inside of the lips, and . . . was doing that for a while." She elaborated that defendant was "rubbing, just touching me" with "[h]is hands." She continued that defendant then yelled at her to get out and change her pants. According to EG, she believed that she was in trouble and did not tell anyone what happened at that time.

In 2010, defendant moved out of his sister's home in Montrose and moved to Clio to live with his girlfriend and her four children, including MM and DM.[1] MM was eight years old, and

---

[1] EG's mother testified that defendant's girlfriend and his girlfriend's children moved in with them a few months after defendant moved in, and in 2010, defendant, his girlfriend, and his girlfriend's

-1-

DM was four years old. DM testified that one night in August 2010, defendant entered her room and pulled her off her bed. He unzipped his pants and made her touch him, and he lifted up her nightgown and touched her breasts and vagina with his hands. DM told her mother the next morning, and the police were contacted that day. According to defendant's parole-violation report, MM also alleged that defendant had touched her vagina over her clothes and "put his tongue in her mouth when he kissed her." Children's Protective Services (CPS) investigated. Defendant was questioned at the Montrose Police Department and denied the allegations. No charges were filed, but a parole investigation concluded that defendant had committed a "violation . . . referencing inappropriate touching of a minor," and his parole was extended until December 2011.

EG testified that she first told others about what had happened when she was in the seventh grade, telling her friend, boyfriend, and school counselor.[2] In 2020, the friend told EG's sister, who alerted her mother. EG spoke with her mother and father about the offense, and they called the police. In EG's written statement to the police, she indicated that defendant "touched all over the lower half of my body for several minutes." In district court, EG testified that defendant touched the outside of her vagina, but that she was "uncertain" whether he had also touched her inside the vagina. Defendant was originally charged with one count of CSC-II against EG, but the charge was changed to one count of CSC-I after defendant's preliminary examination in 2023.

Defense counsel sent a subpoena to the Department of Corrections (DOC) for defendant's parole records and received documents describing DM's and MM's allegations and the related investigation. In April 2024, the prosecuting attorney filed a notice of intent to introduce the evidence related to DM and MM as evidence of other acts under MRE 404(b). On the first day of trial, the court heard arguments on whether to allow the other-acts evidence. Both MRE 404(b) and MCL 768.27a were discussed as bases for admitting the evidence. The trial court ruled that the evidence was admissible because "the proper purpose" for the evidence was not "substantially outweighed by the danger of an unfair prejudice."

Both EG and DM testified at defendant's trial. At the end of the first day of testimony, the prosecuting attorney moved to amend the information to add a charge of CSC-II as a second count, explaining, "I believe the contact [EG] talked about inserting and rubbing, both of those things happening in that same moment of time, and that it happened for a little bit of time." Defense counsel objected. The trial court ruled that it "cannot disagree with [the prosecution] that [EG]'s testimony does mention contact," and it allowed the prosecution to amend the complaint to add CSC-II as a second count.

During its deliberations, the jury sent a note to the trial court stating that "it was unanimous on one count and . . . undecided on another count." The trial court brought the jury to the courtroom and instructed it on avoiding a deadlock. After further deliberation, the jury found

---

children all moved out. But defendant testified that there were never more than seven people living in the Montrose house (his sister and brother-in-law, their four children, and defendant).

[2] The school counselor was eventually disciplined for not timely reporting the allegations.

defendant guilty on both counts, and the trial court sentenced defendant as described. This appeal followed.

## II. DOUBLE JEOPARDY

Defendant first challenges the sufficiency of the evidence to support his conviction of CSC-II, on the basis that the jury convicted him of both CSC-I and CSC-II for the same act, which violated his constitutional protection against double jeopardy. We disagree.

## A. STANDARD OF REVIEW

"A defendant need not take any action to preserve a challenge to the sufficiency of the evidence." *People v Williams*, 294 Mich App 461, 471; 811 NW2d 88 (2011). However, a defendant preserves a double-jeopardy challenge by presenting the argument before the trial court. *People v Fredell*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 164098); slip op at 12. In this case, defendant raised no double-jeopardy challenge below, leaving that facet of this issue unpreserved.

We review unpreserved double-jeopardy claims for plain error. *Id*. at ___; slip op at 12. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

> [O]nce a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence. [*Id*. at 763-764 (quotation marks and citation omitted).]

## B. ANALYSIS

Defendant only challenges the sufficiency of the evidence to the extent that his convictions allegedly violate double jeopardy. He concedes that EG's testimony was sufficient to support a conviction of CSC-I, but he argues that because EG only testified about one incident, her testimony could not support a separate conviction of CSC-II. Existing caselaw clearly precludes this argument.

The Fifth Amendment of the United States Constitution guarantees that "[n]o person . . . shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ." See also Const 1963, art 1, § 15. When "the same act or transaction constitutes a violation of two distinct statutory provisions," then a conviction of violating both provisions does not violate double jeopardy if "each provision requires proof of a fact which the other does not." *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932). See also *People v Smith*, 478 Mich 292, 315; 733 NW2d 351 (2007) (adopting the *Blockburger* test for double-jeopardy challenges under the state Constitution).

-3-

Conviction of CSC-I requires "sexual penetration," MCL 750.520b(1), which is defined to include "any . . . intrusion, however slight, of any part of a person's body . . . into the genital or anal openings of another person's body," MCL 750.520a(r).  CSC-II does not require sexual penetration, but it does require "sexual contact," MCL 750.520c(1), which is defined to include "the intentional touching of the victim's . . . intimate parts . . . if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, [or] done for a sexual purpose," MCL 750.520a(q).

In *People v Duenaz*, 306 Mich App 85, 105; 854 NW2d 531 (2014), the defendant similarly argued that he could not be convicted of both CSC-I and CSC-II for the same act.  We disagreed:

> On the basis of the Legislature's definitions of "sexual penetration" and "sexual contact," CSC-I and CSC-II each require proof of a fact that the other does not.  The differing elements for the offenses of CSC-I and CSC-II demonstrate the Legislature's intent to authorize separate convictions and punishments for these offenses.  "Sexual penetration" is an element of CSC-I but not CSC-II.  CSC-II requires that "sexual contact" be done for a "sexual purpose," an element not included in CSC-I.  Under *Blockburger*, conviction and punishment for both CSC-I and CSC-II does not violate double jeopardy. [*Id*. at 107, citing *People v Lemons*, 454 Mich 234, 253-254; 562 NW2d 447 (1997) (noting that "CSC-II is a cognate but not a lesser-included offense of CSC-I").]

Defendant does not challenge whether the evidence presented was sufficient to individually satisfy the elements of CSC-I and CSC-II, only that he could not be convicted of both crimes for the same act.  He argues that CSC-II is a lesser included offense of CSC-I, so his conviction of both crimes violated double jeopardy.  *Duenaz* plainly contradicts this argument.  Defendant does not ask us to depart from binding caselaw, but instead simply overlooks that binding caselaw has rejected his position.  Even if we accept that the prosecution only presented evidence of a single act, that act could support a conviction of both CSC-I and CSC-II without violating double jeopardy.  *Id*.  See also *People v Garland*, 286 Mich App 1, 5-7; 777 NW2d 732 (2009) (explaining that the different grades of CSC are "separate statutes," so a single act of sexual penetration may support a conviction of multiple grades of CSC if each offense contains an element that the other does not).  Accordingly, we hold that the prosecution presented sufficient evidence to support defendant's conviction of CSC-II.

### III.  OTHER-ACTS EVIDENCE

Defendant also argues that the trial court erroneously allowed the prosecution to introduce evidence of DM's and MM's allegations of sexual misconduct.  We disagree.

### A.  STANDARD OF REVIEW

"We review the trial court's decision to admit evidence for an abuse of discretion. . . .  The trial court's decision is an abuse of discretion when the result is outside the range of principled outcomes." *Id*. at 98.  "But we review de novo preliminary questions of law regarding whether a statute or evidentiary rule applies, or . . . constitutional protections require exclusion of evidence." *Id*.  "A preserved trial error in admitting or excluding evidence is not grounds for reversal unless,

after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012).  See also MCL 769.26 (stating that errors at trial do not warrant reversal unless "it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice").

### B.  ANALYSIS

Evidence is relevant if it has any tendency to make a fact of consequence to the action more or less probable than it would be without the evidence.  MRE 401.  Generally, relevant evidence is admissible.  MRE 402.  However, because of its prejudicial nature, evidence of acts other than the charged offense is generally only admissible under specific circumstances:

> (1) Prohibited Uses.  Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) Permitted Uses.  If it is material, the evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, absence of mistake, or lack of accident.
>
> (3) Notice in a Criminal Case.  In a criminal case, the prosecutor must:
>
> (A) provide notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;
>
> (B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and
>
> (C) do so in writing at least 14 days before trial, unless the court, for good cause, excuses pretrial notice, in which case the notice may be submitted in any form.
>
> (4) Requiring Defendant's Theory of the Case.  If necessary to determine the admissibility of evidence under this rule, the court must require the defendant to state the theory or theories of defense, limited only by the defendant's privilege against self-incrimination.  [MRE 404(b).]

Despite the limitations on other-acts evidence, "[o]ur Legislature has decided that evidence of other sexual assaults on children is relevant in a case in which a defendant is charged with committing a sexual offense against a minor."  *Duenaz*, 306 Mich App at 101, citing MCL 768.27a(1).  "Such allegations . . . tend to make the complainant's story more believable by showing propensity to commit the charged offense."  *Id*.  Evidence of other sexual assaults against children is relevant when "it tended to show that it was more probable than not that the minors were telling the truth."  *Id*. at 100.  MCL 768.27a(1) provides as follows:

[I]n a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.

CSC-I and CSC-II are listed offenses. See MCL 768.27a(2)(a); MCL 28.722(i), (u)(*iv*), and (u)(*v*). Our Supreme Court has held "that MCL 768.27a irreconcilably conflicts with MRE 404(b) and that the statute prevails over the court rule." *People v Watkins*, 491 Mich 450, 496; 818 NW2d 296 (2012).

In this case, defendant argues that the other-acts evidence was not properly introduced under MCL 768.27a. The prosecution's notice of intent to introduce testimony from DM and MM[3] only cited MRE 404(b) as the basis for admission, alleging absence of mistake and knowledge as the proper purpose. But on the first day of trial, defendant specifically argued that MCL 768.27a, not MRE 404(b), controlled the requirements for admitting the evidence and that the prosecution had not satisfied the statute's 15-day notice requirement. Referring to its discretion to allow later notice under MCL 768.72a(1), the trial court accepted the prosecution's notice under the good-cause exception because it was only filed a day late, and the "witnesses were known for all of this time, there is no surprise." Defendant does not challenge whether these reasons constituted good cause.

Furthermore, the plain language of MCL 768.72a(1) does not require that the notice be in writing or cite the statute. The prosecution need only "disclose the evidence . . . , including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered." *Id*. Defendant admitted in his objection to the prosecution's notice that he received the records of the other-acts evidence "last year" when he subpoenaed the DOC, and that he provided copies of those records to the prosecution. In other words, defendant had already received the parole-violation report, which contained the substance of DM's and MM's expected testimony. Under these circumstances, we hold that the trial court did not err when it overruled defendant's objection to the notice requirements of MCL 768.72a(1).

Defendant also argues that, even if the prosecution complied with the notice requirements, the other-acts evidence was inadmissible because it was more prejudicial than probative under MRE 403. Generally, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." MRE 403. "[E]vidence admissible under MCL 768.27a remains subject to MRE 403, but . . . courts must weigh the propensity inference in favor of the evidence's probative value rather than its prejudicial effect." *Watkins*, 491 Mich at 496. See also *People v Pattison*, 276 Mich App 613, 619; 741 NW2d 558 (2007) ("In many cases, [MCL 768.27a] allows evidence that previously

---

[3] MM was not called to testify at trial.

would have been inadmissible, because it allows what may have been categorized as propensity evidence to be admitted in this limited context.").

> This does not mean, however, that other-acts evidence admissible under MCL 768.27a may never be excluded under MRE 403 as overly prejudicial. There are several considerations that may lead a court to exclude such evidence. These considerations include (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. This list of considerations is meant to be illustrative rather than exhaustive. [*Watkins*, 491 Mich at 487-488.]

In this case, the factors weigh in favor of admitting the evidence. Despite some minor differences, the alleged other acts were substantially similar to the charged offense. The victims were the same gender and close in age: EG was six, MM was eight, and DM was four. They all lived with defendant at the time of the alleged offenses, and they considered him a trusted family figure. See *People v Beck*, 510 Mich 1, 21; 987 NW2d 1 (2022) (finding that the first *Watkins* factor favored admissibility when the minor victims were within two years of age and the abuse occurred in the defendant's home). The other acts were also temporally proximate to the charged offense. DM and MM raised allegations against defendant in 2010, and defendant's felony information alleged that the offense against EG occurred between 2009 and 2011. The fact that the other-acts evidence indicated two other alleged victims indicated some level of frequency, but DM and MM each alleged only one incident of inappropriate touching, not a consistent pattern of abuse. See *People v Solloway*, 316 Mich App 174, 195; 891 NW2d 55 (2016) (finding that prior sexual abuse was not infrequent because "it was not a one-time occurrence"). Defendant concedes that there were no intervening acts that would weaken the probative value of the other-acts evidence, and we agree.

There is conflicting evidence concerning the fifth *Watkins* factor. On one hand, defendant's parole officer considered the allegations of the other acts reliable enough to characterize them as a parole violation, which resulted in defendant's parole extension. On the other hand, the police investigation did not result in any criminal charges. Furthermore, the parole-violation report stated that DM's mother "signed a safety plan with [CPS] that there would be absolutely no contact with [defendant]" during the investigation, yet "it was discovered that she and her children afterwards spent the weekend with him." The statement that the mother continued to expose her children to defendant soon after the allegations, which resulted in no criminal charges, casts some doubt on the evidence's reliability. This consideration therefore weighed slightly against admissibility.

Concerning the sixth *Watkins* factor, there was a significant need for evidence beyond EG's and defendant's testimony. A crime was not reported until about 10 years after the offense. The trial consisted almost entirely of witness testimony, essentially becoming a credibility contest between EG's and defendant's recollections of events that happened a decade ago. Given the lack of direct evidence to corroborate EG's testimony, the prosecution needed DM's testimony for its

case-in-chief. This consideration weighed heavily in favor of admissibility. See *Solloway*, 316 Mich App at 196 (finding that there was a need for other-acts evidence when there were a lack of eyewitnesses to the CSC-I offense, even though the victim had injuries consistent with the offense and defendant's semen was found on the victim's bed).

After weighing the *Watkins* factors, we conclude that the probative value of the other-acts evidence was not substantially outweighed by the risk of unfair prejudice. Although the trial court did not address the *Watkins* factors, it did weigh the risk of unfair prejudice against the evidence's probative value and correctly concluded that MRE 403 did not preclude its admission. The *Watkins* factors are merely "illustrative," meant to guide courts in their analysis. *Watkins*, 491 Mich at 488. The trial court's decision still fell within a range of principled outcomes. Accordingly, we hold that the trial court did not abuse its discretion when it ruled that the other-acts evidence was admissible.

Defendant also argues that admitting the other-acts evidence violated his due-process rights, citing *Andrew v White*, 604 US 86; 145 S Ct 75; 220 L Ed 2d 340 (2025). *Andrew* reiterated that "the Due Process Clause forbids the introduction of evidence so unduly prejudicial as to render a criminal trial fundamentally unfair." *Id*. at 96. But *Andrew* is distinguishable because the evidence admitted in that case was highly prejudicial yet entirely irrelevant. *Id*. As explained, the other-acts evidence in this case passed the balancing test of MRE 403, and defendant does not argue that evidence admissible under MRE 403 may nonetheless violate the Due Process Clause. Furthermore, the prosecution barely mentioned DM's 11-minute testimony in its closing argument, and defendant has not presented evidence that the jury's near-deadlock was influenced by DM's allegations. Under these circumstances, we hold that the other-acts evidence did not render defendant's trial fundamentally unfair or otherwise deprive him of his due-process rights.

Because the other-acts evidence was admitted consistent with MCL 768.27a, MRE 403, and the Due Process Clause, we uphold the trial court's evidentiary decision.

IV. SENTENCING

Defendant also argues that the trial court did not adequately justify its decision to sentence defendant above the 25-year mandatory minimum sentence for his CSC-I conviction. We disagree.

A. STANDARD OF REVIEW

"We review a trial court's upward departure from a defendant's calculated guidelines range for reasonableness. We review the reasonableness of a sentence for an abuse of the trial court's discretion." *People v Walden*, 319 Mich App 344, 351; 901 NW2d 142 (2017) (citation omitted). An abuse of sentencing discretion occurs when the sentence imposed is not "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (quotation marks and citation omitted).

B. ANALYSIS

Trial courts are not required to sentence criminal defendants within the applicable sentencing guidelines, but the guidelines nonetheless "remain a highly relevant consideration in a trial court's exercise of sentencing discretion. Thus, . . . trial courts must consult those [g]uidelines

and take them into account when sentencing." *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015) (quotation marks and citation omitted). If the trial court departs from the sentencing guidelines, it "must explain why the sentence imposed is more proportionate than a sentence within the guidelines recommendation would have been." *People v Smith*, 482 Mich 292, 304; 754 NW2d 284 (2008). The court abuses its discretion if it "fail[s] to provide adequate reasons for the extent of the departure sentence imposed." *Steanhouse*, 500 Mich at 476.

Defendant does not challenge the scoring of his sentencing guidelines, which recommended a minimum sentence of 108 to 225 months' imprisonment for CSC-I and 29 to 71 months' imprisonment for CSC-II. He also concedes that despite the guidelines, he was subject to a statutory 25-year mandatory minimum sentence for CSC-I because at the time of the offense, defendant was over 17 years old, and the victim was under 13 years old. MCL 750.520b(2)(b). Accordingly, although defendant's 60-month minimum sentence for CSC-II fell within the guidelines recommendation, his 30-year minimum sentence for CSC-I exceeded the mandatory minimum of the recommended guidelines.

Defendant only argues that the trial court did not articulate the reasons for exceeding the guidelines on his CSC-I sentence. He notes that during the sentencing hearing, the trial court articulated its reasons for imposing a within-guidelines sentence for CSC-II, but then it imposed a sentence above the mandatory minimum for CSC-I by referring to the "same logic" that supported the court's sentence for CSC-II. According to defendant, if the court's reasoning justified a within-guidelines sentence for CSC-II, then the same reasoning could not have justified an above-guidelines sentence for CSC-I. We disagree.

When the trial court articulated its reasoning for the CSC-II sentence, it explained that it was sentencing defendant in the top half of the guidelines "because as a family member, as a trusted person within the home, [defendant] violated so many people with [his] actions." The court referred to the sentencing guidelines, the trial testimony, and the victim-impact statements.[4] It emphasized that defendant abused his position of trust by abusing young girls, who "lost trust" in their family, were forced to relive the events at trial and sentencing, and would "never forget" the offense. Those reasons justified the trial court's decision to impose a CSC-II sentence that, although still within the guidelines, was higher than the court otherwise may have sentenced a defendant under less severe circumstances. And when the court reached the CSC-I conviction, it stated that "[t]he People have asked that I go above the 25 years. And in the same logic of what was violated here, I am going to grant that. . . . I think that you should go away for a minimum of 30 years for violating the trust of your entire family and for abusing these young girls."

---

[4] EG, DM, EG's sister, and EG's father all provided detailed victim-impact statements. EG described years of intense mental trauma, "night terrors" resulting in "claw marks" and "bloody gums," fear of her family, loss of innocence, and the negative impacts on her family. DM described years of panic and fear of men, and concerns over defendant's lack of remorse. EG's sister emphasized how the crime had fractured her family and that defendant should be kept away from children. EG's father described how defendant had abused the trust that he had placed in defendant. EG, her sister, and her father each requested a life sentence.

We hold that the trial court sufficiently articulated its reasoning for exceeding the 25-year mandatory minimum sentence on the CSC-I conviction when it expressly adopted the "same logic" that it stated for the CSC-II sentence. Given that MCL 750.520(b)(2)(b) sets a single mandatory minimum sentence rather than a range like the sentencing guidelines, the circumstances in this case that justified a sentence in the top half of the guidelines for CSC-II also reasonably justified a sentence higher than the statutory minimum for CSC-I. We especially note that even though EG was the only victim included in these charges, the trial court also referred to DM as a victim, indicating that it believed DM's testimony regarding defendant's abuse. The evidence that defendant had allegedly abused DM about the same time that he abused EG is a strong factor that would justify exceeding the guidelines, which only contemplate a single act against a single victim. Accordingly, we conclude that the trial court did not fail to provide adequate reasoning for defendant's CSC-I sentence and that exceeding the mandatory minimum sentence for CSC-I by five years was not an abuse of discretion.

## V. CONCLUSION

Because the same act may support a conviction of both CSC-I and CSC-II, defendant's conviction of both crimes did not violate double jeopardy. The trial court also did not err when it allowed the prosecution to present other-acts evidence because the evidence was admissible under MCL 768.27a and its probative value was not substantially outweighed by the danger of unfair prejudice under MRE 403. Finally, the trial court did not abuse its discretion when it exceeded the mandatory 25-year minimum sentence on the CSC-I conviction because it sufficiently articulated why a higher sentence was more proportionate in this case.

Affirmed.

/s/ Thomas C. Cameron
/s/ Mark T. Boonstra
/s/ Brock A. Swartzle